the people. In this case, the trial court made a mistake when it was determined that the officer, Malavera, had seized the defendant when he went to speak with her while she was already parked in a liquor store parking lot. That decision is what the state is contesting today. What Officer Malavera did was merely a consensual encounter in which any private citizen who was speaking with another private citizen gave that one citizen as a police officer. To declare what Officer Malavera did as a seizure will basically indicate that any time the officer wishes to speak with any citizen is automatically a seizure as opposed to just a consensual encounter. In your brief, you blend both encounters. There's two encounters, right? The officer first sees her in the parking lot. She matches the description of the anonymous tip or the private citizen tip, the woman that pulled up next to the officer. But then there's a second encounter after he asks her to stay there. And you blend the encounters in your brief. So what's the justification for the second encounter, where he has her get out of the car? For the encounters, the first encounter, the officer sees the woman who matched the description ask her to wait as he finished up by the current traffic stop he was trying to finish. As for the second encounter, it's just him returning again. So they seem blended because it really is just one encounter. There is a space in between, but that space is just the second time the officer returns to the defendant. It's him making good on his word, saying, do you mind waiting so I can speak to you in just a moment. And according to the defendant, she waited there for about 10 minutes for him to return, right? That's the defendant's statement. The officer said about two to three minutes for him to return. The defendant's position is that the trial court ruled only on the first encounter. He ruled that the first encounter was not justified. That that was, in fact, a stop. And that's how the trial court ruled, correct? The ruling of the trial court is somewhat muddled. He sometimes seemed to indicate that it wasn't the issue was with the first encounter, but with the second encounter, he sometimes seemed to indicate that he combined the encounters himself. It's just somewhat difficult to fully understand what the trial court was trying to get at. But it still takes position that if it's two encounters, one encounter, it's still just a consensual encounter between the police officer and the defendant. Does that change at all when the officer has to get out of the car to do a field sobriety test? No, it doesn't change. Which is that consensual also? It was when the defendant was making her statement to the court, she didn't really explain as to why she did a field sobriety test. That wasn't made pretty clear as to what occurred to have as a test. Well, the defendant testified the officer told her to exit the car and do field sobriety tests. That's what her words. The officer told her to exit the car and do field sobriety tests. Now, if an officer tells you to do something, I mean, is that taken out of the realm of being consensual? If you're being, if there's a show of force, yes, I would make it more into the realm of being a forfeited encounter. But you, I mean, the trial judge in this case shifted the burden. I mean, the defendant testified to what happened at the first encounter and what we're calling the second encounter. And then the trial judge, and it was a motion for a directive finding, trial judge denied that and shifted the burden to the state. Now, you don't claim on appeal that that's an error. I mean, that's not one of your arguments on appeal, correct? Correct. So now the burden is on you. The burden is on the state at that point in time. And then in the face of the defendant testifying that the officer told her to get out and told her to do field sobriety tests, how did you overcome that burden? I believe that, I believe it was argued just that the entire encounters were a consensual encounter, that there was no direct, that there was no show of force as to making the defendant do the field sobriety tests. Well, the state argued in the trial court that the motion was limited to the initial encounter, that the motion was limited to just that first encounter, that it was a, and the trial court found this is not a, not a blockage case. It's an anonymous tip case and relied on our decision in Minks and didn't get to the second encounter in his ruling. But as Justice Burke pointed out, the defendant did testify, the officer had her get out of the car. So is it your position that the officer had sufficient information to justify the request or an order to get her out of the car for a field sobriety test? Based upon all the information that he had, she's parked in a liquor store, possibly to refill whatever she had been drinking that caused her to drive recklessly? For this situation, the case, the United States Supreme Court case, Navarrete v. California is very similar in which officers received an anonymous tip from someone driving on the road that someone was, a white pickup truck was swerving and nearly ran that person off the road. When police saw the vehicle that matched that description, they pulled it over and eventually found marijuana. Did they see any other bad driving before they pulled it over? No, no bad driving in that case whatsoever. The United States Supreme Court said that the tip given by that anonymous 911 caller was sufficient in order to pull that vehicle over. As the description of the vehicle matched what the caller stated and the description of what occurred, the swerving and running the caller off the road, was indicative of impaired driving. In this case, there is an anonymous tip given by a citizen saying they saw this vehicle, they described the vehicle as a black SUV with a V-shaped insignia that was swerving over the road and described the driver of the vehicle and indicated where the vehicle was heading towards that liquor store. When officers saw the vehicle in the liquor store parking lot, he saw the vehicle and saw the driver match the description, which it did. So, under the California, there is sufficient information for the officer. For the officer's request, they have to perform a field sobriety test. Yes. And you don't look at that as a seizure. Is that correct? Is that what you're saying? I'm saying that if there were a seizure, then there was sufficient information for a seizure. Even if it was a seizure, you're saying that there was sufficient information to request a field sobriety test? Yes. And that is the purpose of the field is to establish proper cause for the arrest? Correct. Yes, sir. The defendant doesn't challenge proper cause in the motion? No, it does not. Well, in briefing this case, you felt that you were bound by what your predecessors for the state did in the trial court in not arguing there was reasonable articulable suspicion, correct? That is correct. The state felt that it should be bound itself to the rules of forfeiture. So, you argue, I mean, realistically, as you state in your reply brief, you are not arguing that there was reasonable articulable suspicion. You're arguing consent. Yes, my brief does argue consent. But as Justice Burke had asked about whether or not there would be a reasonable suspicion, there is a reasonable, like other, not only in California, there would be a reasonable suspicion to stop this vehicle. But consent is a limitation on the parties, not the court. Forfeiture. Forfeiture, I'm sorry.  Yes, sir. The trial court was mistaken to determine that this was a seizure, as this was an essential encounter between the officer and the defendant. Even if this court were to view it as a seizure, there is justification under the case of Navarrete, California, to justify the officer's seizing the defendant. Are there any more questions? No. Thank you, Your Honor. We ask that you reverse the decision of the trial court. We demand further proceedings. Thank you. Thank you, Mr. Taylor. You will have time for a further argument. Ms. Ekin. Good morning, Your Honors. May it please the Court also. My name is Yasmin Ekin, and I represent the appellee, Ms. Kathleen Bianca. Obviously, the dispute here is whether the encounters with the officer were consensual or whether Ms. Bianca was seized in violation of her Fourth Amendment rights. And I will, since the questions seem to go more to, your questions seem to go more to the second encounter, I will go to that. First of all. In the motion to suppress, only the first encounter was raised, correct? Correct. However, counsel did argue that the argument that the second encounter was a seizure was before the court. Counsel? The State objected to that and said, Judge, they didn't allege probable cause in our motion. They challenged only the first encounter. I don't agree. Isn't it gamesmanship to now, on appeal, argue that the second encounter, when it wasn't raised in the motion to suppress, and it's raised for the first time after all the testimony is complete, for the first time, the defense says, well, the second encounter was a seizure as well. What's the purpose of 114.12C's fact-pleading requirement? Isn't it to put the court and the parties, the State, on notice as to what constitutional argument the defendant's making? Yes, Your Honor. The State, because of the gamesmanship, ultimately loses because they forfeited their argument here. Well, counsel made the argument before the court ruled on it the first time, and I don't recall in the record that the State objected on those particular grounds. The court only ruled on the first encounter. The court only ruled that the anonymous sit was not sufficient in justifying the initial encounter. He said that was a stop. Correct. He never got into reasonable articulable suspicion or anything else regarding the second stop, correct? Correct, but the argument was in front of him. Counsel did make that argument, and I do not recall in the record that the trial court's finding on the first encounter was correct. Well, let's talk about that. Sure. What men and male factors were present? The fourth factor is in play, actually, and counsel talked about that there was no physical force used. A seizure occurs also when a show of authority would cause a reasonable person to believe that their freedom of movement is restrained, and the fourth factor is in play here, and that is the language, along with the officer's conduct, compelling, which conveyed a message that Ms. Bianca was required to stay at the scene. Her testimony was that the officer asked her to remain there, correct? Correct. And she said she waited there for 10 minutes. Correct. Is your position that any reasonable person would believe that they would be compelled to stay? Our position is that any reasonable person, under these circumstances, where an officer pulls up next to you in his squad car in full uniform and asks you to stay and wait because he is clearing another traffic stop and wants to come back and talk to you, our position is that the officer's language of literally stay and his conduct conveyed to Ms. Bianca that she was not free to leave. He was coming back to talk to her. She could not ignore that request. She could not drive away. That is a seizure. He left the area and there was no order. It was just merely a request. A request can constitute a seizure if, along with that request, the officer's... Social force. No, the officer's conduct. It doesn't have to be physical force. The officer's conduct communicates to her that she is not free to go about her business and ignore his request. What conduct was there here? I mean, he asked her, she said he asked her, and there's no indication of any yelling, any commanding tone that I saw on the record, basically just a request. Well, I would say, actually, I would say that the role of the trial court was to determine whether his tone, his intent was a seizure rather than a consensual encounter. And if you look at what the trial court, when the trial court does address whether or not this was a seizure, and the court does not do it, admittedly, until the state's ruling on the state's motion to reconsider, but he says the officer was in the area on another stop and he went over to Ms. Bianca and said to the driver, don't leave, I'm working on this other case. Then he left the area and the driver stayed. So the test becomes what does a reasonable person think is happening? Do they have the right to leave? She stayed. I think she stayed because a uniformed officer in a squad car told her not to leave. That's his, you're correct about that. That's the language. But his finding that she was basically told her not to leave is against the manifest way of the evidence, isn't it? Because the defendant's own testimony repeatedly was that he asked her to remain there, not that he ordered her. But whether he asked her or whether he ordered her, you have to look at that. You have to look at the context. The trial court's specific finding is not what the evidence was, correct? Not literally. You're right. Not literally. But it is the trial court's role. He heard the witnesses. He weighed their credibility. And he is in the best position to interpret whether that request was truly a request. Was it truly a request where she felt that she actually had the option of driving away when he told her, I'm coming back to talk to you? Have you ever heard the phrase a guilty conscience means no accuser? So we don't look, that's why we don't look at the frame of mind, subjective frame of mind of the defendant. We look at whether or not a reasonable person, innocent of a crime, would take that as an order or compulsion to remain there, correct? Yes. And you're saying that the officer pulling up next to her and saying, would you mind waiting here? I'm on another stop. And then leaving for 10 minutes? I don't think he said. And there's a distinction there. I think that those distinctions matter. I don't think he said, would you mind. I don't think he. Her testimony, I'm talking about her testimony was, he asked me to stay there. He asked me to stay there. And it wasn't, but it wasn't language which showed that he was giving her a genuine choice to leave. He didn't say, you know what, you can go, but I have some concerns, and if you don't mind. He didn't say, if you don't mind. If you don't mind, I would prefer that you just stay here for a few minutes, and I'm going to be back in a few minutes to talk to you. So for an encounter to be consensual, your view is that an officer must then explain the ramifications of leaving. No, that is not my. It's not enough to just say, would you mind waiting here? I'd like to talk to him. Or whatever words he used. He asked her to stay there. His words were, and he wasn't even, he basically said, he couldn't recall the exact words, but it was, could you stay put? Could you stay put? Because I have literally left another traffic stop because it's that important for me to come back here and talk to you. I don't know, I cannot imagine any reasonably innocent person who thinks at that point that an officer telling you, I'm going to come back and talk to you, I obviously have a reason to talk to you, that they could say, you know what, I just don't, I think I'm going to head home. Any case, and all the cases that you cited, obviously they're, you know, in some way are similar, but in all those cases there's an officer pulling up, an order that's given, is there any case where an officer makes a request and then leaves? And is completely out of view? Where a reviewing court has found that that is a stop? Your Honor, no, of course not. That's why I would say that this is a case where you can't, you can't apply, you can't say, let me apply that Mendenhall Factor checklist and find a seizure occurring. Because it doesn't apply right. And that's the point. This will be another case where, you know, if an officer literally comes and tells you, asks you to stay and tells you that I'm leaving to go investigate and finish up my other traffic stuff, and I'm going to come back and talk to you, you know, does a reasonably innocent person believe that, you know, the officer is conveying to them, but it's okay if you leave, even though I'm telling you I want to come back and talk to you. I, it is such a peculiar circumstance that I, you have to assess the language he uses along with obviously all these peculiar facts and his conduct. And, I mean, the coercive nature of the stop escalated when the officer returned. Because at the point where the officer returned, it basically became the functional equivalent of a traffic stop, which is always required in reasonable suspicion. It's always been considered a Fourth Amendment seizure. Because we don't know, we have no idea what occurred during that second stop in terms of the conversation that took place, other than she was either asked or ordered to get out of the car. And from there, there were fields, and then after that, there was a breath test, right? Correct. So we don't know exactly what he heard, what he saw, what he smelled that would establish probable cause because the way the motion was put and the way it was, you know, presented to the trial court, correct? Correct, but Wouldn't it be fairer for the state to have notice of what the allegation is so they can present you full testimony regarding what the officer heard, saw, smelled? Your Honor, again, my recollection of the record is differently in the sense that I don't find that the state objected on those grounds to say that they didn't have a fair opportunity of notice. No, the state stuck to the motion. They did, and The state said, Judge, they're not arguing anything about justification for the arrest. They're arguing it's only the first encounter, that this was a stop based upon an anonymous tip because that's what the motion said, correct? But they did not make that, my recollection is not that they made that specific argument, that we are only arguing the first encounter because counsel never argued. The assistant state's attorney said, Judge, they haven't argued, they haven't alleged probable cause. Probable cause for arrest. Well, again, you know, the terminology is sometimes confused, but obviously the prosecutor said they challenged only the first stop. Well, then apparently I was confused, too, because my understanding of their statement was they haven't challenged probable cause for arrest. Well, we talked about what's raised in the motion, what's in the motion, and the only thing in the motion is the first encounter. And what you're, obviously in any pleading, in a motion to suppress, you plead, what's the violation and what is the evidence we want suppressed? The evidence in the motion that you want suppressed is that second encounter, is the field sobriety test, is the breath test that was taken after the first encounter, which you alleged in the motion was a stop, correct? Correct. So there's no evidence regarding what the officers saw, heard, or smelled because of the motion, correct? Correct. I guess I would say that if there's ambiguities in the record, the burden did shift to the state, whether it's on the first stop or the second stop. I'm curious, the ultimate burden is the defendant's, correct? On a motion to suppress. It remains with the defendant, even though you've shifted the burden to the state for purposes of prima facie case. Correct. And the state didn't meet that burden. The state did not meet that burden here. There was both the first and the second encounter, or you can combine them, but they were seizures that were not supported by reasonable suspicion. And frankly, to bring up Navarrete versus California at this point, it was certainly not argued in the state's brief. I'm familiar with that case. And that tip also, I mean, the one thing that tip had was more reliability because it was a 911 phone call. We do not have that here. This is the equivalent of an anonymous tip. Well, here we have a passing motorist who said she just saw the defendant driving all over the road and then gave a description. So it's really not that much different than a 911 tip, is it? But she didn't give her name. I mean, there was no repercussions for her giving a false report. And that is important to establish the reliability of the informant. That's a critical point, and it's a critical difference. And under Minks, the officer probably should have waited to see whether or not there was any additional driving that would confirm all suspicions, right? I think so, under Minks. I think actually here the officer could have, the officer, the record here shows that the officer's intent, and I understand it's not his subjective intent unless his subjective intent is somehow conveyed to the defendant, which I do believe it was here. I believe the officer's subjective intent in this case from the get-go was a Terry Stott type of investigation. But because the officer could have, he literally, he took the time to drive, to move a traffic stop, drive over, stop next to Ms. Bianca. And when you think of cases like Ludeman where they talk about what constitutes a consensual encounter, he could have gone up to the window and seen if he observed any signs. We read cases, we do read cases like this all the time. Oh, I smelled alcohol, her eyes were glassy. He could have even asked her, have you had anything to drink? Were you just driving? Where were you just driving? Where were you coming from? That's a consensual encounter. That is the type of information-gathering type of consensual encounter where, you know, that doesn't offend our notions of the Fourth Amendment protection of our right to be free from unreasonable intrusions. And that would be okay. But what would happen here, this is not okay. We can't expand consensual encounter to fit what an officer did wrong to now say, oh, well, okay, this was consensual. He told her to, he asked her to stay because he needed to come back and talk to her. No reasonable person would believe that they could leave under those circumstances. He could have made this a consensual encounter. Unfortunately, he didn't. By asking more questions, that makes it a consensual encounter? Asking questions to try to corroborate the anonymous tip that he had received. But if that's, if that would turn it into a consensual encounter, then why is he coming back to ask those questions after the fact, consensual? Because he asked her to- Because that's when he theoretically developed the proper cause of reasonable suspicion for the arrest. First of all, there's nothing in the record to show that he did. Oh, there is. She said, she answered questions and did field tests and then she was arrested. We don't know the specific results of that, though. Right. But the asking her to get, or getting her out of the car and doing the field sobriety test, he didn't say at that point, when she got out of the car, she stumbled out of the car. He didn't say, when I did talk to her, she smelled like alcohol. He didn't say, I started to, I suspected that she was under the influence, and so that's why I asked her to do field sobriety tests. I mean, that's what makes the second encounter even more coercive. There is no rationale for him- Well, we don't know what his rationale was because it was never gone into during the hearing. Well, the state had the opportunity to bring those things out. I mean, I guess I, you know, why didn't the state ask those questions? Well, the prosecutor said because the only thing that was alleged in the motion was the initial stop, that it was a tip case. It was a tip case, and that's the way the trial court ruled. The trial court focused on the tip and whether or not this was a tip case. The state focused on that, but now we, here we are in the second encounter because of the way- But I don't think it was, you know, an ambush. You don't, again- No, I'm not suggesting that. Defense counsel made the argument before the court ruled on it, and the state filed a motion to reconsider. Had the state, you know, really objected to defense counsel's argument that the second encounter was just even more coercive, they didn't put that in their motion to reconsider. They didn't say, you know, that that was improper and, you know, the court should not even consider the second part. They accepted that. In fact, I would say they acquiesced in counsel's argument. And, you know, so they didn't say, well, let's reopen the proofs because I didn't understand that she was going to argue that as well, so give me another chance and I'll show you that actually, you know, the officer had reasonable suspicion by the time he ordered her out of the car and asked her to do a field sobriety test. There was nothing like that in the record. What about the trial court's concern about how to handle it, how this would be handled at trial? I don't see that coming into play with this issue at all. I think it was- The judge just was commenting on that that might present a problem. The difficulty of bringing in hearsay from this anonymous informant. If there are no further questions, Your Honor, our position, of course, is the totality of these circumstances show that the encounters were unlawful Fourth Amendment seizures and they supported the trial court's finding that Ms. Bianco was illegally seized and, therefore, we ask that this court affirm the trial court's order granting the motion to suppress. Thank you. Thank you, Counsel. Mr. Taylor, rebuttal item. There's two points I want to make. Go ahead. There's two points I want to make on rebuttal. The first point, it seems during the defendant's argument is that any police officer in uniform who wishes to speak with an individual on the street has already committed a Fourth Amendment stop. We know that can't be correct, but according to the defendant's argument, because the officer drove up to the defendant, asked her to wait a few moments, and then returned later on, that somehow was a Fourth Amendment seizure. That defendant felt that she could not leave the situation at that point. However, such a looking at that doesn't correlate to what the case law indicates for how a Fourth Amendment seizure is. How the officer asked the individual to wait a few moments to speak with them does not show authority. It's just two people wanting to talk with each other. My second point I want to get through is the medical factors. As mentioned previously, the medical factors were of the four factors, none of them are present in this case. There was only one officer, no display of a weapon, no show of force. The officer wishes to speak with the individual defendant. Beyond that, what about the defendant's argument that the state had an opportunity to present evidence regarding justification for the arrest, and the officers testified, but there was no evidence presented regarding what the officers saw or the smell that would justify his belief that the defendant was under the influence of alcohol. And that was raised, and there's no evidence. As Your Honor indicated, that when the defendant first brought that up during the initial hearing, the state had objected to it because the original motion was focused on the actual seizure itself and not the justification for any form of test, physicality test, or arrest. So that's why. Wasn't the defendant's argument, though, when the defense counsel says, Judge, if the first seizure wasn't, if the first encounter wasn't a stab, I'm paraphrasing here, then certainly the second encounter was a seizure. The state just does nothing to fill in the gaps. If you look at the actual decision made by the trial court, there's no real indication that they actually decided based upon that particular argument. But we can affirm the trial court for any basis supported by the record, correct? That is correct, yes. And we review the ultimate issue of whether there was a seizure here de novo, correct? Correct, Your Honor, yes. So, you know, if the defense argument on the directive finding goes to the second stop, the first stop and the second encounter, the state doesn't, I mean, I'd have to review the record again, but the state didn't seem to pose much of an objection at that point in time. And then an argument at R-73738, the state actually responds to this argument and argues that it's a consensual encounter, the second encounter is a consensual encounter. I mean, the state had numerous opportunities, did it not, to object to this at trial as well as on appeal, to object to this going beyond the scope of the written motion? It may seem like that, Your Honor. It could just be how the state focused its responses tailored to what the trial court actually ordered, made a decision based on not so much the arguments made by the defendant. The defense counsel never formally moved to amend the motion. However, counsel did argue that the second encounter, when he comes back to her window and acknowledged what she acknowledged on the stand, he asked for her driver's license, insurance, and that under the law is a seizure, the state never responds to that or didn't ask to reopen and recall the officer to have him testify to what it was that he observed that required further testing. The state never fully responded to that, Your Honor. Ultimately, the state wishes to ask this court to reverse the decision of the trial court that this was a consensual encounter. In alternative, under Verity, California, there was no suspicion to seize the defendant. And we ask that this case be referred to proceedings. Thank you, Your Honor. Thank you, Mr. Gould. I thank the attorneys for their arguments today. The case will be taken under revising. I'm going to make a short recess before the next case.